IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

MARY E. RUSSELL                                                                          PLAINTIFF

vs.                                       Civil No. 4:07-cv-04028

MICHAEL J. ASTRUE[1]                                                                DEFENDANT
Commissioner, Social Security Administration


**MEMORANDUM OPINION**

  Mary E. Russell ("Plaintiff") brings this action pursuant to § 205(g) of Title II of the Social Security Act ("The Act"), 42 U.S.C. § 405(g) (2006), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Act.  The parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings.  (Doc. No. 4).[2]  Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

**1. Background:**

  Plaintiff's application for DIB now before this Court was filed on June 22, 2004.  (Tr. 55-62). This application alleges an onset date of October 2, 2003.  (Tr. 10, 73).  At the administrative

---

[1] Michael J. Astrue became the Social Security Commissioner on February 12, 2007.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue has been substituted for acting Commissioner Jo Anne B. Barnhart as the defendant in this suit.

[2] The docket numbers for this case are referenced by the designation "Doc. No."  The transcript pages for this case are referenced by the designation "Tr."

1

hearing, Plaintiff elected to amend this onset date to April 1, 2000. (Tr. 10, 459-460).

Plaintiff alleges she is disabled due to a number of different impairments, including the following: hip problems due to her total hip replacement in 2001 (Tr. 124); dysphagia (Tr. 124); fibromyalgia (Tr. 124, 192); hypertension (Tr. 124); osteoarthritis (Tr. 124); hypercholestolemia (Tr. 125); coagulation deficit (Tr. 125); hip problems due to her 2002 and 2003 left hip injection (Tr. 144, 150, 156); congenital hip dysplasia (Tr. 156); degenerative spurring at C5-6 and C6-7 and C4-5 (Tr. 195); "12-30-04 trigger point injections" (Tr. 200); anxiety (Tr. 201); depression (Tr. 201); paresthesias of hands and feet (Tr. 201); erosive osteoarthritis of the hands (Tr. 213); asthma (Tr. 213); migraine headaches and scotomas (Tr. 213); restless leg syndrome (Tr. 213); sciatica (Tr. 213); "side effects of medication" (Tr. 213); GERD[3] (Tr. 214); bilateral carpal tunnel syndrome (Tr. 220); acute anemia (Tr. 235); hyperlipidemia (Tr. 238); chronic lower back pain (Tr. 269); hip problems due to her total hip replacement in 2005 (Tr. 268); mild osseous[4] facet hypertrophy[5] at L4-5 and L5-S1 (Tr. 311); and cervical muscle spasms and degenerative changes at C-5 (Tr. 322). (Doc. No. 8, Page 3). Plaintiff's claims, however, primarily involve her fibromyalgia, osteoarthritis, carpal tunnel syndrome, high blood pressure, hypercholestolemia, and constant pain. (Tr. 13, 55-89).

Plaintiff's application was initially denied on September 28, 2004 and was denied again on reconsideration on January 3, 2005. (Tr. 36-39). Plaintiff requested an administrative hearing which was held on March 3, 2006 *via* video teleconferencing in Texarkana and Little Rock, Arkansas. (Tr.

---

[3] "GERD" is an abbreviation for "gastroesophageal reflux disease." *PDR Medical Dictionary* 801 (3rd ed. 2006).

[4] "Osseous" is defined as "boney, of bonelike consistency or structure." *See id.* at 1387.

[5] "Hypertrophy" is defined as a "general increase in bulk of a part or organ, not due to tumor formation." *See id.* at 929.

432-470). Plaintiff was present and was represented by an attorney, Barry Barber, at this hearing. *See id.* Plaintiff, Plaintiff's friend (Jayne Randolf), Plaintiff's husband (Robert Russell), and Vocational Expert ("VE") Ken Waits testified at this hearing. *See id.* At the time of this hearing, Plaintiff was forty-nine years old, which is classified as a "younger individual" under 20 C.F.R. § 404.1563(c) (2007). Plaintiff also had received her business degree from the University of Arkansas Community College at Hope ("UACCH") at the time of the hearing. (Tr. 435-436).

On July 28, 2006, the ALJ entered an unfavorable decision denying Plaintiff's request for DIB. (Tr. 10-16). In this opinion, the ALJ determined that Plaintiff met the insured status requirements of the Act through June 30, 2000. (Tr. 12, Finding 1). The ALJ determined that Plaintiff had not engaged in Substantial Gainful Activity ("SGA") at any time relevant to his decision. (Tr. 12, Finding 2). The ALJ determined Plaintiff suffered from the severe impairments of osteoarthritis and fibromyalgia. (Tr. 13, Finding 3). The ALJ determined that, although Plaintiff did have these two severe impairments, she did not have an impairment or a combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). (Tr. 13, Finding 4).

The ALJ also evaluated Plaintiff's subjective complaints and determined Plaintiff's Residual Functional Capacity ("RFC"). (Tr. 13-15, Finding 5). In evaluating Plaintiff's subjective complaints, the ALJ determined that Plaintiff's testimony was not fully credible. (Tr. 14-15). The ALJ based this determination on several different findings, including the following: (1) Plaintiff's daily activities from the relevant time period were inconsistent with her claims of disabling pain; (2) Plaintiff's failure to seek medical treatment during the relevant time period was inconsistent with her claims of disabling pain; and (3) Plaintiff's medical records from the relevant time period were

inconsistent with her claims of disabling pain. (Tr. 12-15). Based upon these findings, the ALJ determined Plaintiff retained the ability to perform the full range of sedentary work. (Tr. 13, Finding 5). Specifically, the ALJ found that Plaintiff retained the ability to perform the following: "[L]ift and carry up to 10 pounds occasionally . . . stand and walk for up to 3 hours in an 8 hour work period (30 minutes without interruption) . . . sit for up to 5 hours in an 8 hour work period (1 without interruption) . . . ." (Tr. 13).

The ALJ also determined whether Plaintiff could perform her Past Relevant Work ("PRW"). (Tr. 15, Finding 6). The VE testified at the administrative hearing regarding this issue. (Tr. 467-470). The VE testified that Plaintiff's PRW included work as a pharmacy technician (light, semiskilled), term sales clerk (light, semiskilled), secretary (sedentary, skilled), and teacher aide II (light, semiskilled). *See id.* The ALJ determined, based upon the VE's testimony and in light of Plaintiff's RFC, that Plaintiff could perform her PRW as a secretary. (Tr. 15, Finding 6). The ALJ also determined, based upon these findings, that Plaintiff had not been under a "disability," as defined by the Act, at any time relevant to the ALJ's decision. (Tr. 16, Finding 7).

On February 9, 2007, the Appeals Council declined to review the ALJ's March 3, 2006 hearing decision. (Tr. 4-7). Subsequently, Plaintiff filed the present action. (Doc. No. 1). The parties consented to the jurisdiction of this Court on March 29, 2007. (Doc. No. 4). Plaintiff and Defendant have both filed appeal briefs. (Doc. Nos. 8-9). This case is now ready for decision.

**2. Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g) (2006); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than

a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *See* 42 U.S.C. § 423(d)(1)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3)

whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity (RFC) to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.  *See Cox,* 160 F.3d at 1206;  20 C.F.R. §§ 404.1520(a)-(f).  The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

**3. Discussion:**

Plaintiff brings the present appeal claiming the ALJ erred by (A) improperly discrediting the opinion of Plaintiff's treating physicians, (B) finding that Plaintiff's medical records did not support her claimed disability, (C) improperly discounting Plaintiff's subjective complaints of pain, (D) finding that Plaintiff's impairments did not meet the requirements of any of the Listings, and (E) finding that Plaintiff could perform secretarial work even with osteoarthritis in her hands. (Doc. No. 8, Pages 3-19).

In response, Defendant argues that the ALJ properly evaluated Plaintiff's medical records and properly determined that Plaintiff was not disabled during the relevant time period.  (Doc. No. 9, Pages 3-8).  Defendant argues that there is only one piece of medical evidence included in the record that relates to Plaintiff's impairments during the relevant time period, which is not sufficient to establish that Plaintiff was disabled during the relevant time period.  *See id.*  Defendant also argues that the ALJ properly evaluated Plaintiff's subjective complaints of pain and discomfort and that, despite Plaintiff's claim that she meets the requirements of the Listings, Plaintiff has not met her

6

burden of establishing that her impairments meet those requirements.  *See id.*  Because this Court finds the dispositive issue in this case is whether Plaintiff established she was disabled prior to her Date Last Insured ("DLI"), this Court will only address this issue.

**A. Relevant Time Period**

In Title II cases, the relevant time period for purposes of determining a disability is from the claimant's alleged onset date through his or her DLI.  The relevant time for the ALJ to *begin* considering a claimant's medical records is the *alleged onset date*.  *See Pirtle v. Astrue,* 479 F.3d 931, 934-35 (8th Cir. 2007).  The ALJ is permitted, however, to consider other evidence of record, including medical records and opinions dated prior to the alleged onset date, where there is no evidence of deterioration or progression of symptoms.  *See id.*

Additionally, the relevant time for the ALJ to *stop* considering a claimant's medical records is the claimant's DLI.  It is well-established in Title II social security disability cases that the claimant must establish that he or she was disabled prior to the expiration of his or her insured status or prior to his or her DLI.  *See Pyland v. Apfel,* 149 F.3d 873, 876-77 (8th Cir. 1998) (holding that "in order to receive disability insurance benefits, an applicant must establish that she was disabled before the expiration of her insured status."); *Ingram v. Barnhart,* 303 F.3d 890, 895-96 (8th Cir. 2002).  The ALJ may, however, consider evidence *dated after* a claimant's DLI in determining whether a claimant is disabled.  *See Ingram,* 303 F.3d at 895-96.  To be considered, this evidence must relate to the claimant's condition prior to his or her DLI.  *See id.*

In the present action, Plaintiff's alleged onset date was April 1, 2000.  (Tr. 10, 459-460). Although this Court may review medical records dated prior to this date, this Court is required to review Plaintiff's medical records that are dated beginning on this date.  Plaintiff's DLI was June

30, 2000 (Tr. 10), and Plaintiff was required to establish that she was disabled prior to this date. *See Pyland,* 149 F.3d at 876-77. Accordingly, the relevant time period for the purposes of this review is from April 1, 2000 (Plaintiff's alleged onset date) to June 30, 2000 (Plaintiff's DLI).

In an attempt to establish her disability in this case, Plaintiff provided the ALJ with medical evidence and extensive subjective testimony related to her claimed impairments. For the medical evidence, Plaintiff provided a limited number of medical records dated prior to her DLI. (Tr. 247-250, 261, 356-358). Plaintiff also provided a limited number of medical records dated *after* her DLI that reference her conditions or impairments prior to her DLI. (Tr. 226, 268). For her subjective testimony, Plaintiff both extensively explained her claimed impairments in the documents she filed with the SSA and presented extensive testimony regarding her claimed limitations at the administrative hearing. (Tr. 55-62, 65-89, 432-470). This Court will address both Plaintiff's medical evidence and subjective complaints regarding her claimed impairments.

### B. Plaintiff's Medical Evidence

In this case, Plaintiff provided a limited number of medical records that are dated during the relevant time period (dated prior to her DLI and after her alleged onset date). (Tr. 247-250, 261, 356-358). These medical records are routine treatment records indicating that Plaintiff suffers from osteoarthritis, fibromyalgia, and other impairments and that Plaintiff takes a number of different medications, including Lescol, Verapamil, Robaxin, Trazodone, Maxzide, and Celebrex, to treat those impairments. *See id.* However, these medical records do not indicate that Plaintiff is restricted in her ability to perform substantial gainful activity due to these impairments. In fact, these medical records do not establish that Plaintiff is limited, in any way, in her ability to work. Plaintiff must provide this Court with some credible medical evidence establishing she is limited in her ability to

work. *See Thomas v. Sullivan,* 928 F.2d 255, 259-260 (8th Cir. 1991); *Goff v. Barnhart,* 421 F.3d 785, 790-92 (8th Cir. 2005) (holding that the claimant has the burden of establishing his or her RFC); *Marolf v. Sullivan,* 981 F.2d 976, 978 (8th Cir. 1992) (holding that a social security claimant must present at least *some* medical evidence supporting his or her claimed disability). These routine medical records simply do not establish that Plaintiff is limited in her ability to work.

Furthermore, Plaintiff has provided a limited number of medical records that are dated *prior to* her alleged onset date. (Tr. 251-252, 262-263, 290-291, 322-323-355, 423, 428-429). Although these records are not within the relevant time period, they still may be considered by the ALJ in making his or her disability determination. *See Pirtle,* 479 F.3d at 934-35. These records, however, are also routine medical records which do not establish that Plaintiff is limited, in any way, in her ability to work. Many of these medical records are also completely unrelated to Plaintiff's current claim of disability and, instead, relate to pregnancy or asthma and allergies. (Tr. 251, 262-263, 328, 355, 423, 428-429). Plaintiff has the burden of establishing that her limitations caused her to be disabled. *See Cox*, 160 F.3d at 1206. These routine medical records simply do not establish that Plaintiff is limited in her ability to work. *See Thomas,* 928 F.2d at 259-260.

Plaintiff's other two medical records, which refer specifically to her ability to work during the relevant time period, are dated nearly five years after the expiration of Plaintiff's DLI. (Tr. 226, 268). Both of these records are short, one-page opinion letters based upon her doctors' impressions of her impairments as of June 2000 (Plaintiff's DLI). *See id.* Both of these opinion letters are conclusory, and neither letter is based upon any specific medical examinations or findings. *See id.*

First, Plaintiff's treating orthopaedist, Dr. Chris Alkire, wrote an opinion letter dated

9

February 20, 2005.[6]  (Tr. 268).  In this letter, he stated that Plaintiff suffered from osteoarthritis in both hips, fibromyalgia, carpal tunnel syndrome, and lumbar spine hypertrophy.  *See id.*  He also stated that Plaintiff suffered from all of these conditions, except for carpal tunnel syndrome, from 1997 until June of 2000 (Plaintiff's DLI).  *See id.*

Dr. Alkire did not, however, express any opinion regarding any *specific limitations* on Plaintiff's ability to perform substantial gainful activity, and his opinion is not inconsistent with the ALJ's finding that Plaintiff can perform sedentary work.  *See id.*  In his letter, Dr. Alkire did not find that Plaintiff was unable to perform the requirements of sedentary work during the relevant time period, such as lifting and carrying up to ten pounds occasionally, standing and walking for up to three hours in an eight-hour work period (thirty minutes without interruption), and sitting for up to five hours in an eight-hour work period (one hour without interruption).  *See id.*  Instead, Dr. Alkire merely referenced Plaintiff's work limitations without providing any specific date or date ranges when Plaintiff may have suffered from those limitations: *"Ms. Russell has undergone active treatment for her osteoarthritis when, by her work history to me, her work activities decreased because of continuing pain and discomfort, mainly in her hip." See id.* (emphasis added).

Dr. Alkire's letter only catalogs his experience with Plaintiff and her claimed impairments (listed above).  It provides very little information other than the fact that Plaintiff may need hip surgery in the future if her condition continues to deteriorate.  *See id.*  Such an opinion letter, which is not supported by any specific medical testing during the relevant time period and that is dated well after Plaintiff's DLI, is not sufficient to meet Plaintiff's burden of establishing that she was disabled

---

[6] Dr. Alkire also wrote another opinion letter dated November 10, 2005 in which he found that, due to her physical limitations, Plaintiff could no longer perform her past work.  (Tr. 266).  This November 10, 2005 letter referenced Plaintiff's *current* condition, *as of the date of the letter*, and did not reference Plaintiff's condition before her DLI.  Thus, this letter does not relate to the relevant time period.

during the relevant time period. *See Thomas,* 928 F.2d at 259-260.

Second, Plaintiff included a similar opinion letter from Dr. Robert A. Dorman that is dated March 1, 2005. (Tr. 226). Dr. Dorman is also one of Plaintiff's treating physicians and is a specialist in internal medicine. *See id.* Dr. Dorman's opinion letter is only one paragraph in length and states as follows:

> Mary. E. Russell has been a patient of mine since March of 1996. In December of 1996 she was diagnosed with Fibromyalgia. She also suffers from Hyperlipidemia, Osteoarthritis of the hips, Sciatica, and Hypertension. Due to these conditions she has been unable to work full time since June of 2000. My records show no evidence that her condition has changed since that time, nor is it likely that her physical limitations will improve in the future.

*See id.* This opinion letter also merely recites Plaintiff's physical impairments and then states that, based upon her physical limitations, Plaintiff cannot work full-time. *See id.* Dr. Dorman's finding is not based upon any specific medical evidence or testing. *See id.* Furthermore, in this letter, Dr. Dorman did not provide any basis for concluding that Plaintiff cannot work full-time or has any specific work limitations. *See id.* Determining disability is a task that has been delegated to the ALJ, not to the physicians who treat the claimants in social security cases, and even a treating physician's opinion is entitled to little weight if that opinion amounts to little more than a conclusory finding regarding Plaintiff's ability to work. *See Thomas,* 928 F.2d at 259-260.

### C. Plaintiff's Subjective Complaints

At the administrative hearing and in her documents she filed with the SSA, Plaintiff claimed, in great detail, that she was unable to work during the relevant time period due to her impairments. (Tr. 61-62, 82-89, 432-470). She claimed she suffered from disabling pain and discomfort twenty-four hours a day during the relevant time period. (Tr. 61). The ALJ evaluated Plaintiff's subjective complaints in his July 28, 2006 opinion and discounted those complaints to the extent that they

11

established that Plaintiff was unable to perform substantial gainful activity. *See id.* In her appeal brief, Plaintiff claims the ALJ erred by discounting her subjective complaints of pain and by improperly applying *Polaski*. (Doc. No. 8, Pages 11-20). In response, Defendant argues the ALJ properly evaluated her subjective complaints of pain and discomfort and discounted those complaints for legally sufficient reasons. (Doc. No. 9, Pages 3-5).

In general, in assessing the credibility of a claimant, the ALJ is required to examine and to apply the five factors from *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984) or from 20 C.F.R. § 404.1529 and 20 C.F.R. § 416.429. *See Shultz v. Astrue,* 479 F.3d 979, 983 (2007). These factors, which provide as follows, must be analyzed and considered in light of the claimant's subjective complaints of pain: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the functional restrictions. *See Polaski,* 739 at 1322. The ALJ is not required to methodically discuss each factor as long as the ALJ acknowledges and examines these factors prior to discounting the claimant's subjective complaints. *See Lowe v. Apfel,* 226 F.3d 969, 971-72 (8th Cir. 2000). Furthermore, an ALJ's credibility determination is generally entitled to deference. *See Woodruff v. Astrue,* No. 06-1818, 2007 WL 913854, at *1 (8th Cir. March 28, 2007). As long as the ALJ properly applies these five factors and gives several valid reasons for his or her finding that the Plaintiff's subjective complaints are not entirely credible, the ALJ's credibility determination is entitled to deference. *See id.*; *Cox v. Barnhart,* 471 F.3d 902, 907 (8th Cir. 2006). The ALJ, however, cannot discount Plaintiff's subjective complaints "solely because the objective medical evidence does not fully support them [the subjective complaints]." *Polaski,* 739 F.2d at 1322.

When discounting a claimant's complaint of pain, the ALJ must make a specific credibility determination, articulating the reasons for discrediting the testimony, addressing any

12

inconsistencies, and discussing the *Polaski* factors. *See Baker v. Apfel,* 159 F.3d 1140, 1144 (8th Cir. 1998). The inability to work without some pain or discomfort is not a sufficient reason to find a Plaintiff disabled within the strict definition of the Act. The issue is not the existence of pain, but whether the pain a Plaintiff experiences precludes the performance of substantial gainful activity. *See Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir. 1991).

In the present action, the ALJ evaluated several of the *Polaski* factors prior to deciding to discount Plaintiff's subjective complaints. (Tr. 12-15). First, the ALJ evaluated Plaintiff's daily activities and determined that those activities indicated she was not disabled during the relevant time period. *See id.* Specifically, the ALJ noted that despite her claims of disabling pain, Plaintiff was able to work part-time and to act as a primary caregiver for a young child for a substantial period of time after her alleged onset date. *See id.*

Second, the ALJ determined that Plaintiff's claimed duration, frequency, and intensity of her pain were not consistent with her medical records from the relevant time period. *See id.* Specifically, the ALJ noted that Plaintiff failed to seek medical treatment during the relevant time period and that this failure indicated that she did not suffer from severe pain.[7] *See id.*

Third, the ALJ determined that Plaintiff's claimed functional restrictions were not supported by her medical records. *See id.* The ALJ noted that there was no credible medical evidence included in the record that supported Plaintiff's claimed functional restrictions or that stated she was in any way limited in her ability to work. *See id.*

The ALJ has provided three valid findings supporting his credibility determination; and,

---

[7] The ALJ stated repeatedly in his opinion that Plaintiff *entirely* failed to seek medical treatment during the relevant time period. (Tr. 13-16). This finding is not accurate. As indicated above, the transcript includes several medical records from the relevant time period. These records do, however, indicate that Plaintiff did not seek any extensive treatment during the relevant time period, which does support the ALJ's decision to discount Plaintiff's subjective complaints.

13

therefore, his determination is entitled to deference. *See Woodruff,* 2007 WL 913854, at *1. The ALJ determined that Plaintiff's subjective complaints were not credible and that those complaints did not establish that she was unable to perform substantial gainful activity during the relevant time period. Because the ALJ has provided several valid reasons supporting this credibility determination, this Court affirms the ALJ's determination that Plaintiff's subjective complaints are not credible to the extent alleged.

Based upon the foregoing review of the evidence in the transcript, the ALJ's disability determination is based upon substantial evidence in the record and should be affirmed. Plaintiff's medical evidence and subjective complaints do not establish that Plaintiff was limited in her ability to perform substantial gainful activity.

### 4. Conclusion:

The undersigned finds that the decision of the ALJ, denying benefits to Plaintiff, is supported by substantial evidence and should be affirmed. A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED this 28th day of November, 2007.**

/s/   Barry A. Bryant
Honorable Barry A. Bryant
United States Magistrate Judge